COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | | |
|---|---|---|---|
| ROY STOLTZ, | § | | |
| | | No. 08-10-00048-CR | |
| Appellant, | § | | |
| | | Appeal from the | |
| v. | § | | |
| | | County Court at Law Number Two | |
| THE STATE OF TEXAS, | § | | |
| | | of El Paso County, Texas | |
| Appellee. | § | | |
| | | (TC# 20080C13983) | |
| | § | | |

## O P I N I O N

A jury convicted Appellant, Roy Stolz, of family-violence assault. The trial court sentenced Appellant to one-year confinement, suspended the sentence, and placed Appellant on community supervision for twenty months. Appellant presents five issues on appeal alleging that the trial court erred in failing to grant requested jury instructions and in admitting the complainant's hearsay statement, and challenging the legal and factual sufficiency of the evidence. We affirm.

## BACKGROUND

At trial, Cruz Limas-Stoltz testified that she and her husband, Appellant, had separated and, when she moved out, she took their preschool aged daughters, Alexis and Audrey, with her and gave her house key to Appellant. In July 2008, Cruz had surgery requiring bed rest and asked Appellant to care for Alexis and Audrey for two weeks. After her post-surgery follow-up visit, Cruz's physician required an additional two-week recovery period. After doctors released Cruz from medical care, Appellant would not return Alexis and Audrey to her, despite Cruz's requests. According to Cruz, Appellant would not answer her phone calls and she believed Appellant was avoiding her. Appellant asserted that Cruz had left their daughters with him in July but did not make

attempts to see or contact them.

On October 21, 2008, Cruz went to Alexis' preschool to pick her up. Appellant's nineteen-year-old daughter, Ashley, was helping at the preschool and notified her father that Cruz was at the school. The preschool teachers would not release Alexis to Cruz. Upon Appellant's arrival, the preschool released Alexis to both parents who had begun to argue. Appellant held one of Alexis' hands while Cruz held the other. As they walked away from the school, Appellant asked Cruz why she was picking up their daughter and told Cruz that she had no business there. Cruz informed Appellant that he had no right to keep Alexis away from her. Appellant picked up Alexis and walked toward a minivan, and Cruz unsuccessfully tried to retrieve Alexis while pushing Appellant. Cruz testified that Appellant pushed her on the arm and, by the time she regained her posture, Appellant had already placed Alexis in a car seat on the driver's side of his minivan and had closed the door. According to Cruz, Appellant pushed her again and she grabbed the minivan's door handle to keep from falling onto the ground. Cruz pulled herself up, opened the minivan door, had her knee on the floor of the vehicle and her upper body in the van, and was attempting to unbuckle Alexis' car seat when Appellant got into the driver's seat and turned on the vehicle's engine. Ignoring Cruz's warning that she was halfway in the van, Appellant started to drive the minivan. Cruz again yelled that she was in the van but instead of stopping, Cruz testified that Appellant "took off," dragging her about four feet and leaving her on the ground. Cruz testified that she felt pain, suffered "road rash" on her left shoulder, an elbow, the palm of her hand, a knee, and her left calf, and developed a bruise on the arm where Appellant had previously pushed her. At trial, photos of Cruz's injuries were admitted into evidence without objection.

Officer Andrew Fonseca of the El Paso Police Department responded to a dispatch on a possible assault. The trial court initially barred the hearsay testimony of Officer Fonseca regarding

Cruz's statements to him. Officer Fonseca then clarified that he arrived five minutes after being dispatched to the school where he observed that Cruz had dirt stains on her shirt, was upset and had been crying. Officer Fonseca stated that he tried to calm down Cruz "as best as possible" to learn what happened. Thereafter, over Appellant's objection, the trial court permitted Officer Fonseca to testify regarding Cruz's on-scene report to him about the events that occurred. Officer Fonseca observed that Cruz had scrapes on her left leg, left elbow, and right palm, and stated the injuries were consistent with a fall and with being in close proximity to a vehicle that was being driven away. After concluding his interview with Cruz, he returned to the police station to prepare an arrest warrant for Appellant's assault of Cruz.

Upon arriving at the police station, Officer Fonseca was approached by Appellant who was waiting for him. Without objection, Officer Fonseca testified regarding Appellant's report to him. Appellant advised Officer Fonseca that after he put Alexis into the car seat, he closed the sliding door of the minivan and Cruz opened the door again.[1] Appellant stated that he physically put his hands on Cruz and shoved her to keep her away. Appellant then closed the door again and noticed that Cruz was attempting to open the rear sliding door. Appellant stated that he left in the minivan with Cruz still hanging onto the vehicle's door handle, and said that once he left, Cruz fell to the ground but had not been dragged. Appellant informed Officer Fonseca that Cruz did not have any part of her body inside the minivan and explained that she fell because she was "hanging" onto the door handle. Appellant never informed Officer Fonseca that Cruz assaulted him, that he suffered any injuries, or that Alexis was harmed during any of the events.

On cross-examination, Officer Fonseca explained that it is unlawful to restrain the movement

---

[1] Officer Fonseca's testimony refers to "children," rather than to a "child" or "Alexis." For ease of reference, we substitute "Alexis" for the term "children."

of a person's vehicle by hanging onto it, that a person possibly trespasses by opening a door and entering a vehicle, and that it is illegal for someone to enter a vehicle and attempt to remove a child therefrom.

A teaching assistant at the preschool, Monica Blanco, testified that although her view was unobstructed and that she did see Appellant put Alexis in the car, close the door, and drive off, she did not see Cruz on the ground, opening the vehicle door, or trying to remove Alexis from the car. Blanco acknowledged that she did see Cruz attempt to enter the vehicle and observed that Appellant ignored Cruz.

Appellant testified that his daughter, Ashley, called him and he went to the school to find out why Cruz was trying to pick up Alexis. He stated that he was nervous because Cruz had informed him on a previous occasion that she and the children were going to move to Denver without his permission. After arriving at the school and arguing with Cruz, Appellant decided to take Alexis after Cruz called her co-worker who was a constable. According to Appellant, Cruz and the constable had stalked him. Appellant took Alexis to his van and said that as he was putting Alexis in her car seat, Cruz shoved him and demanded that he allow her to take Alexis. Appellant closed the door, entered the minivan, and started the vehicle. When Cruz opened the door and began to "yank" Alexis, Appellant got out of the vehicle and "moved" Cruz with his arm, closed and locked the door, and entered the vehicle again. Appellant testified that Cruz told him not to leave because she was not going to let go of the door handle and that when the constable arrived to arrest him, she would leave with the "kids." Appellant stated, "I don't think so," and put the car in the "drive" gear, even though he was aware that Cruz was holding onto the door handle. Appellant testified that he did not accelerate the minivan and that Cruz walked with the vehicle for a few steps but then tripped and fell. He later testified that he saw Cruz on the ground but did not actually see her fall and said

that he did not know if she tripped because she had on high heels or if she threw herself on the ground. After the car traveled about one car length, Appellant said he pulled up and exited the vehicle to look and see if Cruz was all right because his intention was "not to hurt her." He observed Cruz getting up from the ground and testified that she smiled at him and prepared to make a phone call. Appellant did not ask Cruz if she was all right because, "[t]he smile alone told me she was okay[.]" Appellant reentered the vehicle and drove away with Alexis. Appellant stated that Cruz was never in the car and that he never touched her. Appellant felt it was necessary to drive off because Cruz was yanking on the door handle "like she was going to break it open" and because Cruz was trying to unsuccessfully remove Alexis from her car seat. Appellant also stated that he felt that his daughter's safety may be in danger if he didn't leave because if the constable arrived, "it was going to be him against me, and I was not going to let my daughter be taken away from me." He then called 911 to report an altercation, and eventually went to the police station to speak with Officer Fonseca.

On cross-examination, Appellant testified regarding and demonstrated the manner in which he pushed Cruz to "make personal space between [them]." He also acknowledged that Cruz was pushing with the intent to get to their daughter rather than actually pushing him. According to Appellant, Cruz assaulted him.

The trial court's charge instructed the jury, in relevant part: (1) to find Appellant guilty if, beyond a reasonable doubt, it found the elements of the offense as charged, and to find him not guilty if it did not so find or if reasonable doubt existed; (2) as to self-defense, that if Appellant acted because of a reasonable belief that the force he used was immediately necessary to protect himself against an unlawful use or attempted use of unlawful force by Cruz due to a reasonable apprehension of danger by Appellant when viewing the facts and circumstances from the viewpoint of Appellant

alone, or if the prosecution failed to persuade beyond a reasonable doubt that such facts were untrue, it must acquit Appellant and return a not-guilty verdict; (3) as to necessity, that if Appellant reasonably believed, viewed from his standpoint at that time, that his conduct of accelerating his motor vehicle was immediately necessary to avoid imminent harm, and the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law "prescribing" the conduct, it should acquit Appellant but if it had a reasonable doubt that Appellant acted reasonably, or that the desirability and urgency of avoiding harm was unreasonable under the circumstances, then it should give Appellant the benefit of the doubt and return a not-guilty verdict; and (4) regarding the presumption of Appellant's innocence and the State's burden of proof.[2]  Appellant requested that the trial court's self-defense instruction to the jury be expanded to encompass defense of a third person and asked that the application paragraph include the phrase, "immediately necessary to protect himself or his daughter Alexis Stoltz."  He also requested that the trial court's charge instruct the jury that Appellant's actions were presumed to be reasonable because Cruz "was unlawfully and with forced entry, or was attempting to enter unlawfully and with force, his vehicle" as described in section 9.31 of the Texas Penal Code.  The trial court denied Appellant's request for the additional instructions.  The jury found Appellant guilty of assault as charged in the information.

## DISCUSSION

Appellant presents five issues.  Because Issues One, Two, and Five complain of trial court error, we address them together.  Issues Three and Four challenge the legal and factual sufficiency of the evidence to support the verdict.

---

[2]  The trial court's charge defined relevant terms and concepts such as "intentionally," "knowingly," "recklessly," and "reasonable belief."

**Alleged Trial Court Error**

1.  Jury-Charge Error

*Standard of Review*

Our review of alleged jury-charge error begins with a determination of whether an error actually exists in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988); *Rubio v. State*, 203 S.W.3d 448, 451 (Tex. App. – El Paso 2006, pet. ref'd). When a trial court erroneously refuses to instruct the jury on a statutory or affirmative defense, we must then conduct a harm analysis. *Reich-Bacot v. State*, 936 S.W.2d 961, 962 (Tex. Crim. App. 1996). Preservation of charge error does not become an issue unless we assess harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the defendant preserved the error by objection. *Ngo*, 175 S.W.3d at 743. When, as here, a defendant objects to the charge, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of the defendant or unless it appears from the record that the defendant has not had a fair and impartial trial. TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). In determining whether harm has resulted, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. If there is "some harm" resulting from the objected-to charge, the error requires reversal. *See Trevino v. State*, 100 S.W.3d 232, 241-42 (Tex. Crim. App. 2003).

We review a trial court's decision to admit evidence under the excited-utterance exception

to the hearsay rule for an abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). A trial court does not abuse its discretion by admitting or excluding evidence unless its ruling is outside the zone of reasonable disagreement. *Id.* The excited-utterance exception to the hearsay rule allows statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *Arzaga v. State*, 86 S.W.3d 767, 774-75 (Tex. App. – El Paso 2002, no pet.). An excited utterance is regarded to be sufficiently trustworthy to be admissible as an exception to the hearsay rule "because it represents an event speaking through the person rather than the person speaking about the event." *Zuliani*, 97 S.W.3d at 595. To qualify as an excited utterance, a statement must be the product of a startling event, made while the declarant is still dominated by the emotion, excitement, fear, or pain of the event, and relate to the circumstances of the startling event. *See Apolinar v. State*, 155 S.W.3d 184, 186-87 (Tex. Crim. App. 2005). While the time spanning the event and the utterance and the manner in which the statement is made are factors considered when determining whether the declarant was still under the influence of the event at the time of the statement, they are not dispositive of the issue. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001).

### *Application*

In Issues One and Two, Appellant asserts that the jury should have been instructed on defense of a third person and the presumption of the reasonableness of his actions as he requested because the trial testimony allegedly shows that Cruz was attempting to take Alexis, was "illegally" restraining Appellant by holding onto the minivan's door handle, that it was illegal for a person to open the door to another person's vehicle, and illegal to remove a child out of another person's vehicle without permission. TEX. PENAL CODE ANN. §§ 2.01, 9.33 (West 2011).

To rely on self-defense or defense of a third person as justification for what would otherwise

be criminal conduct, a defendant must first admit committing the conduct which forms the basis of the indictment.   TEX. PENAL CODE ANN. §§ 9.31, 9.33; *see East v. State*, 76 S.W.3d 736, 738 (Tex. App. – Waco 2002, no pet); *see also Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). Conduct is defined as "an act or omission and its accompanying mental state." TEX. PENAL CODE ANN. § 1.07(a)(10) (West 2011).  An  instruction to the jury is not appropriate when the defensive evidence fails to essentially admit to "every element" of the offense. *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007).

The information charged Appellant with causing bodily injury to Cruz by accelerating a motor vehicle, causing her to fall and strike the ground.  While Appellant admitted putting the vehicle into its "drive" gear, he twice expressly denied accelerating the vehicle or that he intended to cause Cruz harm.  He did, however, testify that he told Cruz to release the door handle because he was going to "take off," and stated that, once he put the minivan in gear, it "rolled" and "started to move forward."  Appellant did not specifically admit that this act caused Cruz to fall and strike the ground as alleged in the information but he did acknowledge on cross-examination that Cruz's injuries were not self-inflicted.  By the very thinnest of margins, we find this contradictory evidence sufficient to essentially constitute Appellant's "admission" of every element of conduct which forms the basis of the indictment. *See Shaw*, 243 S.W.3d at 659.

A defense is raised if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true. *Id.*  When a defense is supported by the evidence, the defendant is entitled to an instruction on that defense, even if the evidence supporting the defense is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible. *Id.* at 657.  However, the evidence must support a rational jury finding as to each element of the defense. *Id.*  A defendant is not entitled to an

instruction on self-defense if the evidence of self-defense, when viewed in the light most favorable to the defendant, does not establish the defense. *Ex parte Nailor*, 149 S.W.3d 125, 132 (Tex. Crim. App. 2004).

The trial court instructed the jury on self-defense and necessity, while denying Appellant's specific requests to instruct the jury on both defense of a third person and on the presumption of the reasonableness of his belief that force was immediately necessary to protect himself under the theory of self-defense. A person is justified in using force or deadly force against another to protect a third person if: (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 (Self-Defense) or 9.32 (Deadly Force in Defense of Person) in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person. TEX. PENAL CODE ANN. § 9.33 (West 2011) (Defense of Third Person). Section 9.31 of the Texas Penal Code provides, in part:

> [A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. The actor's belief that the force was immediately necessary . . . is presumed to be reasonable if the actor:
>
> (1) knew or had reason to believe that the person against whom the force was used:
> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied . . . vehicle . . .;
>
> .   .   .
>
> (2) did not provoke the person against whom the force was used; and
>
> (3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

TEX. PENAL CODE ANN. §§ 9.31(a)(1)(A), (a)(2), (a)(3) (West 2011) (Self-Defense). When the Penal Code or another penal law establishes a presumption with respect to any fact or in favor of the defendant with respect to any fact and when there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless a trial court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact. TEX. PENAL CODE ANN. §§ 2.05(a)(1), (b)(1) (West 2011) (Presumption).

When asked if he felt his actions were necessary to protect himself and Alexis, Appellant replied, "Yes, sir[,]" and then explained that as soon as he received the phone call from his daughter, Ashley, he first thought of Cruz's alleged threat to take their daughters and leave town. There was no evidence that Cruz either immediately intended to harm Appellant or his daughters if she had taken either of them away from the school or from the city, and no evidence was presented to show that Cruz was without legal authority to either spend time with or travel with Alexis. However, Appellant testified that he feared for Alexis' safety because Cruz had tried to pull her away from him and was continuing to tug at the minivan's door handle. According to Appellant's testimony, Cruz had stated she would not release the door handle of the minivan until the constable arrived and arrested Appellant. Appellant stated that he was also concerned for Alexis' safety because, if the constable arrived, Appellant was not going to let anyone take Alexis from him. While the evidence in support of Appellant's defense-of-a-third-person theory is weak at best, and was, arguably, not perceived as credible by the trial court, we view it in the light most favorable to Appellant. *See Shaw*, 243 S.W.3d at 657; *Ex parte Nailor*, 149 S.W.3d at 132. In doing so, we find there is some evidence on each element of the defense that, if believed by the jury, would support a rational inference that the element is true. *See* TEX. PENAL CODE ANN. § 9.33; *Shaw*, 243 S.W.3d at 659.

In turn, we also find there is slightly sufficient evidence of the facts that give rise to the presumption under Sections 9.31(a)(1)(A) and 9.33 and that the issue of the existence of the presumed fact should have been submitted to the jury as dictated under Section 2.05. TEX. PENAL CODE ANN. §§ 2.05(a)(1), (b)(1), 9.31(a)(1)(A), (a)(2), (a)(3), 9.33.

Ultimately, however, considering the record as a whole, including the entire charge, the evidence and the arguments of counsel, leads us to conclude that the trial court's error in failing to instruct the jury as requested by Appellant did not cause Appellant harm in this case. Moreover, where a jury is instructed on self-defense and finds a defendant guilty, the jury implicitly rejects the self-defense theory, thus precluding the possibility that the defendant was justified in using deadly force to defend a third person. *Hernandez v. State*, 914 S.W.2d 218, 224 (Tex. App. – El Paso 1996, pet. ref'd). Here, the trial court instructed the jury on self-defense and the jury found Appellant guilty of assault. Under these facts, we find that the jury's implicit rejection of Appellant's self-defense theory precluded a finding that Appellant was justified in using force to defend a third person. *Hernandez*, 914 S.W.2d at 224. Because any error in failing to instruct the jury on defense of a third person was harmless, we overrule Issue One.

Moreover, for the same reasons discussed above, considering the record as a whole, the entire charge, which included instructions on self-defense and necessity, the evidence, and the arguments of counsel, we find the trial court's error in failing to instruct the jury on the presumption of the reasonableness of Appellant's belief that the use of force was immediately necessary was harmless. Under the specific facts of this case, we also find that the jury's rejection of Appellant's self-defense and necessity theories, in turn, precludes a presumption that Appellant's belief that the use of force was immediately necessary to protect him was reasonable. TEX. PENAL CODE ANN. §§ 2.05(a)(1), (b)(1), 9.31(a)(1)(A), (a)(2), (a)(3), 9.33; *see Hernandez*, 914 S.W.2d at 224. For these reasons, we

overrule Issue Two.

## 2. Excited-Utterance Exception

*Standard of Review*

In Issue Five, Appellant contends the trial court erred when it admitted Cruz's hearsay statement to Officer Fonseca over his timely objection. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). It is generally inadmissible unless a statute or the Rules of Evidence provide a specific exception permitting its admission. TEX. R. EVID. 802. One such exception is the excited utterance, which is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by an event or condition. TEX. R. EVID. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). In determining whether a statement falls within the excited-utterance exception, a court must assess whether: (1) the statement was the product of a startling event; (2) the declarant was dominated by the excitement of the event; and (3) the statement related to the circumstances of the startling event. *See McCarty v. State,* 257 S.W.3d 238, 240-41 (Tex. Crim. App. 2008); *Jackson v. State*, 110 S.W.3d 626, 633 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd). The court may also consider other factors such as the amount of time elapsed and whether the statement was in response to a question. *Salazar*, 38 S.W.3d at 154. Most importantly, a court must inquire "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *See King v. State*, 953 S.W.2d 266, 269 (Tex. Crim. App. 1997) (citations omitted).

At the outset of Officer Fonseca's testimony, Appellant objected to the hearsay statements made by Cruz to Officer Fonseca. The trial court responded:

All right. With what the officer has testified thus far, I don't think it meets the

excited utterance exception, so the objection is sustained.

Officer Fonseca thereafter testified that it took him five minutes to respond to the scene where he found Cruz to be a bit dirty, visibly upset, crying, and injured. Officer Fonseca stated that he attempted to calm Cruz down "as best as possible" so that he could understand the sequence of events and what had occurred. The State again elicited Cruz's hearsay testimony through Officer Fonseca and the trial court overruled Appellant's objection.

Based on Officer Fonseca's account of the circumstances surrounding Cruz's statements, we find a reasonable person could have concluded that she made her statements to Officer Fonseca while still dominated by the emotion, fear, and pain of the startling event as only a short amount of time had elapsed between the event and Officer Fonseca's arrival, where he found Cruz visibly upset and that her body bore signs of injury. Accordingly, we find the objected-to statements made by Cruz to Officer Fonseca fall within the excited-utterance exception to the hearsay rule. *See Hudson v. State*, 179 S.W.3d 731, 737 (Tex. App. – Houston [14th Dist.] 2005, no pet.) (statements of complainant who was "visibly shaken and highly upset" when officers arrived five minutes after being dispatched were within the excited-utterance exception to the hearsay rule); *Bufkin v. State*, 179 S.W.3d 166, 172 (Tex. App. – Houston [14th Dist.] 2005), *aff'd*, 207 S.W.3d 779 (Tex. Crim. App. 2006) (excited-utterance exception applied where complainant was so extremely agitated that officers could not understand her upon their arrival). Because the complained-of hearsay fits within the excited-utterance exception to the hearsay rule, the trial court did not err in admitting the statements into evidence. Issue Five is overruled.

### Sufficiency of the Evidence

*Standard of Review*

In Issues Three and Four, Appellant complains of the insufficiency of the evidence to find

him guilty and to reject his self-defense theory. Legal sufficiency under *Jackson v. Virginia* is now the only standard that we apply in determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010), *overruling Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) (case establishing factual-sufficiency standard of review). Under this standard, we defer to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Considering all the evidence in the light most favorable to the verdict, we determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. Sufficiency of the evidence is to be measured by the elements of the offense as defined by the hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

When we review the sufficiency of the evidence, we should consider "events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) ("[I]t is not necessary that every fact point directly and independently to the defendant's guilt;

it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances."); *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and may alone be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

It is our duty to determine whether the explicit and implicit findings of the jury are rational in a light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992); *Levario v. State*, 964 S.W.2d 290, 294 (Tex. App. – El Paso 1997, no pet.). The introduction of conflicting evidence does not render evidence insufficient. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996). We assume that the fact finder resolved conflicts in the evidence in favor of the jury's verdict. *Id.* Similarly, we presume that the trier of fact resolved any conflicting inferences in favor of the prosecution and must defer to that resolution. *Id.*

It is the defendant's burden to produce some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Upon producing such evidence, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). The State is not required to produce evidence to refute the claim but is required to prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. The issue of self-defense is a fact issue to be determined by the jury, which is free to accept or reject the defensive issue. *Saxton*, 804 S.W.2d at 913-14. The fact finder is the sole judge of the weight and credibility of the evidence. *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, — U.S. —, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009). A jury's verdict of guilt is an implicit finding rejecting a defendant's self-defense theory. *Saxton*, 804 S.W.2d at 914. Thus, as when reviewing the sufficiency of the evidence to support a conviction, when reviewing the sufficiency

of the evidence to support a jury's rejection of an appellant's self-defense theory, we examine all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against an appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914, *citing Jackson*, 443 U.S. 307.

*Application*

In Issue Three, Appellant challenges the legal sufficiency of the evidence to support his conviction for assault. He also contends that if his actions were sufficient to constitute assault, the evidence was insufficient to show that he did not act in self defense, in defense of a third person, or out of necessity.

A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. TEX. PENAL CODE ANN. § 22.01 (West 2011). By complaint and information Appellant was charged with intentionally, knowingly, and recklessly causing bodily injury to Cruz Stoltz by accelerating a motor vehicle "causing [Cruz] to fall and strike the ground."

Based on the evidence, much of which was conflicting, which we view in the light most favorable to the verdict, we hold a rational jury could have found beyond a reasonable doubt: (1) that Appellant intentionally, knowingly, and recklessly caused bodily injury to Cruz by accelerating the minivan and causing her to fall and strike the ground, and (2) that his self-defense and necessity defenses were not reasonable under the circumstances. The trial court instructed the jury that:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.
>
> A person acts knowingly, or with knowledge, with respect to the nature of his

conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Cruz told Appellant that she was in the van and Appellant testified that he was aware, at a minimum, that Cruz was holding onto the door handle of the vehicle. Yet, knowing this, Appellant started the minivan's engine, put the vehicle into the "drive" gear, thus allowing the minivan to move forward while he knew Cruz was holding onto the vehicle's door handle. Cruz testified that she fell, was dragged, and felt pain. Appellant testified that he did not see Cruz fall but believed that she tripped or threw herself on the ground. Photographs of Cruz's injuries were admitted into evidence and Officer Fonseca testified that he observed Cruz's shirt to be torn on the left side, that she was a bit dirty, that she was crying and he attempted to calm her down "as best as possible" to learn what happened. This evidence supports the jury's verdict and to the extent that the evidence is conflicting, it was within the province of the jury to determine the witnesses' credibility and the weight to be given to their testimony. *Brown*, 270 S.W.3d at 568; *Matchett*, 941 S.W.2d at 936.

Moreover, Appellant presented no evidence that his actions were in fact immediately necessary to protect himself or anyone else from harm. Rather, Appellant admitted that he left because he was concerned for Alexis' safety upon his anticipated arrival of the constable as he was not going to allow Alexis to be taken away from him and it would be "him against me." This was not an existing circumstance requiring immediate action but a potential circumstance which Appellant

anticipated would happen. Thus, given Appellant's explanation for his quick departure and the facts of the case, we find that a rational jury could have found beyond a reasonable doubt against Appellant on his issues of self-defense and necessity. *See Saxton*, 804 S.W.2d at 914. Finding the evidence to be legally sufficient to support the jury's verdict and its rejection of Appellant's defenses of self-defense and necessity, Issue Three is overruled.

In Issue Four, Appellant challenges the factual sufficiency of the evidence to support his conviction. Since Appellant filed his brief in this case, the Texas Court of Criminal Appeals has ruled that legal sufficiency is the only standard applicable to a determination of whether the evidence is sufficient to support each element of a criminal offense. *Brooks*, 323 S.W.3d at 895, *citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) *and overruling Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) (establishing factual-sufficiency standard of review). Therefore, without addressing the merits of Appellant's factual insufficiency argument, Issue Four is overruled.

## CONCLUSION

Having overruled each of Appellant's five issues, the trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

July 27, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)